FILED

NOT FOR PUBLICATION

NOV 02 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. CC-14-1576-FKiKu |
| PROMETHEUS HEALTH IMAGING, INC., | Bk. No. 8:14-bk-10250-CB |
| Debtor. | |
| PROMETHEUS HEALTH IMAGING, INC., | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| UNITED STATES TRUSTEE, | |
| Appellee. | |

Argued and Submitted on October 22, 2015
at Los Angeles, California

Filed – November 2, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:     Alan F. Broidy argued for appellant Prometheus
Health Imaging, Inc.

Before: FARIS, KIRSCHER, and KURTZ, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Appellant Prometheus Health Imaging, Inc. appeals from the bankruptcy court's order dismissing its chapter 11[1] bankruptcy petition for bad faith. While dismissal may be appropriate in this case, we are unable to find any evidentiary support for the factual findings supporting the court's bad faith determination. Accordingly, we VACATE the bankruptcy court's order and REMAND this case to the bankruptcy court for further proceedings.

**FACTS**

On January 14, 2014, Prometheus filed a petition under chapter 11.[2] Wendee Luke signed the petition as Prometheus's president. In its Schedule B, it listed its sole asset as a "[c]laim for damages and lost profits against General Electric Medical Systems Europa, which damages are at least $10,000,000." In its Schedule F, it identified six creditors claiming a total of $5,980,000 in unsecured, nonpriority claims.

Ms. Luke filed a declaration in which, among other things, she advised the court that Prometheus is prosecuting an appeal in France and filed for chapter 11 bankruptcy so that it may proceed with that appeal. In her declaration, she stated:

> [2a.] The Debtor does not currently operate a business. The focus of the bankruptcy is the Debtor's litigation with General Electric Medical Systems Europe ("GEM") regarding an imaging machine that was wrongfully delivered to Saudi Arabia in 2002. The

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Prometheus filed an Amended Voluntary Petition on or around April 7, 2014.

2

Debtor had requested a specific, high quality machine, but GEM sent a different, slower machine that was not suitable for the Debtor's needs in Saudi Arabia. Litigation ensued in the District Court in Ohio, and GEM obtained a judgment against the Debtor for the principal sum of $951,000. In 2010, the Debtor brought action against GEM in Paris, where the court also ruled against the Debtor. In 2012, the Debtor filed an appeal of the Paris court decision, and that appeal is currently pending. It is my understanding that an appeal in Paris is a new matter and that the court is not bound by the lower court ruling. However, the Debtor has no assets to post a bond, and filing a bankruptcy is the only way that the appeal can proceed. If the Debtor prevails on its appeal and recovers sums from GEM, there will be some recovery for creditors. If the Debtor loses on the appeal, there will be no distribution to any creditors.

. . . .

bl. The bankruptcy had to be filed in order to proceed with the Debtor's appeal in Paris.

On June 10, 2014, Prometheus filed its chapter 11 reorganization plan and disclosure statement. Ms. Luke's declaration attached to the disclosure statement advised the court that the appeal was to be heard on February 5, 2015, with a decision expected within thirty to sixty days thereafter.

Prometheus also filed a declaration by Frederic Jeannin, its counsel in the French proceedings. He explained that, under French law, the appellate court would decide the case de novo. He also explained that:

GEM sought to stay the Appeal on the ground that the Debtor had not paid the Judgment, which is a prerequisite for the Appeal to be heard under French law. Since the Debtor had no money to pay the Judgment, the only way to proceed with the Appeal was for the Debtor to demonstrate that it was prevented to pay the Judgment and file a chapter 11 petition and seek to reinstate the appeal.

On September 3, 2014, Appellee United States Trustee for

3

Region 16[3] objected to the disclosure statement ("Objection"). The U.S. Trustee argued generally that "[t]he disclosure statement filed in this case [Docket No. 45] does not contain sufficient information to allow for the formation of an informed judgment and the Court is urged to deny approval absent amendment or supplement." In response, Prometheus filed its First Amended Disclosure Statement Describing Original Chapter 11 Plan. The hearing to approve the disclosure statement was set for October 22, 2014.

On September 19, 2014, the bankruptcy court issued its Order to Show Cause Whether Case is Properly Filed in this Court ("OSC"). The court set a hearing for October 15 and ordered Prometheus's counsel to show cause:

> (1) why venue is proper in this division, (2) why this case should not be transferred to the United States Bankruptcy Court, Central District, Los Angeles Division, (3) why this case should not be dismissed for failure to comply with Section 2.1(a)(5)(A) of the Central District Court Manual, (4) as to Counsel's potential conflict of interest in representing Debtor and creditor Munir Uwaydah, (5) why Counsel failed to disclose debtor's involvement in an ongoing adversary proceeding, case # 2:12-ap-02042-TD in the Central District, Los Angeles Division, and (6) why sanctions should not be imposed and/or this case dismissed for what appears to be an improper filing.

The court additionally stated that it "will determine whether the above entitled bankruptcy case should be dismissed as a bad faith filing . . . ."

Prometheus's counsel filed a declaration in response to the OSC, addressing each of the court's concerns. Regarding the

---

[3] The U.S. Trustee did not file a brief in this appeal or otherwise make an appearance.

4

final issue of an improper filing, counsel stated:

> 8.  The Debtor's bankruptcy case should not be dismissed as a bad faith filing.  As I previously advised the Court, this case is the most unusual chapter 11 case I have ever handled.  The Debtor ceased business operations in 2004, and the Debtor's primary asset is the Appeal of litigation pending in Paris.  As previously disclosed to the court, Frederic Jeannin, counsel for the Debtor for the Paris Appeal, advised me that the Debtor had to file bankruptcy in order to proceed with the Appeal.  As I advised the Court at one of the initial status conferences, this was not a bad faith filing, a la Marsch v. Marsch (In re Marsch), 36 F.3d 825 (9th Cir. 1994), where the Ninth Circuit affirmed the ruling of the bankruptcy court that it was bad faith for debtors to file a chapter 11 petition to obtain a stay of a pending appeal when the debtor had the necessary funds to bond the appeal.  Here, the Debtor has no funds, and the Appeal cannot proceed unless the bankruptcy case remains active.

Similarly, Ms. Luke, as the sole officer and director of Prometheus, stated:

> 6.  The Debtor needed to file a chapter 11 case to proceed with the litigation in Paris against GEM.  I believed it was appropriate for the Debtor to file its chapter 11 case in Orange County because (i) the Debtor's principal place of business is in Orange County; (ii) the Debtor's sole officer and director lives in Orange County; and (iii) the Debtor's agent for service of process lives in Orange County.

The bankruptcy court held the hearing on its OSC on October 15, 2014.  According to the hearing transcript, the hearing lasted roughly four minutes.  Excluding the introductions and discussion concerning fees, the entirety of the hearing consisted of a short exchange between the court and Prometheus's counsel, culminating in the court's dismissal of Prometheus's chapter 11 petition:

> THE COURT: So I saw the information from the person who I guess is the president of Prometheus or what is her role?

> MR. BROIDY: She is the sole - she is the

5

president, the sole officer and director of Prometheus.

THE COURT: Okay. And it's said that she does - I left the paperwork on my desk, unfortunately, but works out of Orange County. And I did - it's a tax prep bill. It's a stip mall with - she's a tax prep - preparer.

MR. BROIDY: That's where she works out of, Your Honor. That's where her building is. But if Your Honor is concerned about the proper jurisdiction here before this court, we will consent that the matter goes - is referred to the district - to the Bankruptcy Court in Los Angeles -

THE COURT: Well, I'm -

MR. BROIDY: - before Judge Donovan.

THE COURT: Prometheus is a Delaware corporation. Is that -

MR. BROIDY: Yes, it is, Your Honor.

THE COURT: Thank you so much. It's a Delaware corporation and this whole thing just looks so fraudulent to me. I'm sorry. It's an attempt to get an automatic stay so he can relitigate in a French court what you've already lost here and already lost in France. And this strip mall tax preparer person seems to be a front for somebody else.

I mean, let's brass tacks here. I'm not buying it, you know. This is not - there is - there's somebody in the background and I know who it is and this woman is not that person, and I'm not happy about this at all. And from day one I wanted to dismiss this case and I'm going to dismiss it because this is not real.

This fellow in the background, who I believe is a fugitive at this point in time, he's using this woman, paying her to work out of the strip mall to file this bankruptcy, to continue to litigate what has been decided in two different countries already and I'm not going to let it go on anymore. I'm not. They bought time. They bought more time than I ever should have given them, but we're not stupid. [We] know what's really going on.

MR. BROIDY: I understand, Your Honor. I'll prepare the order of dismissal.

On or around November 26, 2014, the bankruptcy court entered

6

its Order Dismissing Chapter 11 Case.  Prometheus timely filed its notice of appeal on December 10, 2014.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1).  We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court abused its discretion in dismissing Prometheus's chapter 11 bankruptcy petition.

**STANDARD OF REVIEW**

"We review de novo whether the cause for dismissal of a Chapter 11 case under 11 U.S.C. § 1112(b) is within the contemplation of that section of the Code.  We review for abuse of discretion the bankruptcy court's decision to dismiss a case as a 'bad faith' filing."  Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994) (citing Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167, 170 (9th Cir. BAP 1988)).

The Panel must apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard. Id.  Then, we review the bankruptcy court's factual findings for clear error. Id. at 1262 & n.20; see Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (the bankruptcy court's finding of "bad faith" is reviewed for clear error).  A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical,

7

implausible, or without support in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

**A. The bankruptcy court may dismiss a chapter 11 case for bad faith under § 1112(b).**

Section 1112(b)(1) provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." § 1112(b)(1). Although the statute does not define "for cause," it identifies a nonexclusive list of factors that may constitute "cause." See § 1112(b)(4). "The bankruptcy court has broad discretion in determining what constitutes 'cause' under section 1112(b)." Sullivan v. Harnisch (In re Sullivan), 522 B.R. 604, 614 (9th Cir. BAP 2014) (citing Chu v. Syntron Bioresearch, Inc. (In re Chu), 253 B.R. 92, 95 (S.D. Cal. 2000)).

"Although section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." In re Marsch, 36 F.3d at 828 (citations omitted).

In its oral ruling, the bankruptcy court did not explicitly state that "bad faith" was the basis of the dismissal. However, in the OSC which precipitated the hearing, the court said that it would consider whether the "bankruptcy case should be dismissed as a bad faith filing . . . ." Further, the court commented at the hearing that "this whole thing just looks so fraudulent to

8

me." We conclude that bad faith was the "cause" that the court thought justified dismissal under § 1112(b).

"The existence of good faith depends on an amalgam of factors and not upon a specific fact." Id. (quoting Idaho Dep't of Lands v. Arnold (In re Arnold), 806 F.2d 937, 939 (9th Cir. 1986)). "The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." Id. (citing In re Arnold, 806 F.2d at 939); see In re Mense, 509 B.R. 269, 276 (Bankr. C.D. Cal. 2014) (requiring good faith "deter[s] filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws"). "The bankruptcy court should examine the debtor's financial status, motives, and the local economic environment . . . . Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process." In re Chameleon Sys., Inc., 306 B.R. 666, 670 (Bankr. N.D. Cal. 2004) (quoting In re Arnold, 806 F.2d at 939).

The court may consider a number of factors when determining bad faith: (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) the presence of egregious behavior. See Drummond v. Welsh (In re Welsh), 711 F.3d 1120, 1129 n.45 (9th Cir. 2013) (citing Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir.

9

1999)).[4]  "The bankruptcy court is not required to find that each factor is satisfied or even to weigh each factor equally." Khan v. Curry (In re Khan), 523 B.R. 175, 185 (9th Cir. BAP 2014) (citing Meyer v. Lepe (In re Lepe), 470 B.R. 851, 863 (9th Cir. BAP 2012)).  Rather, "[t]he . . . factors are simply tools that the bankruptcy court employs in considering the totality of the circumstances." Id.; see In re Mitchell, 357 B.R. at 154 ("no single criterion should be considered dispositive, but rather the entirety of the situation must be evaluated").

Moreover, if the court finds cause for dismissal or conversion, it must "(1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." In re Sullivan, 522 B.R. at 612 (citing § 1112(b)(1), (b)(2)).

**B.   The bankruptcy court abused its discretion by failing to articulate a finding of bad faith or any other reason for dismissal that is supported by the record.**

The bankruptcy court dismissed Prometheus's chapter 11 petition at the hearing on its OSC.  Prometheus argues that the court's reasons stated at the hearing are not supported by the evidence in the record.  We agree.

"Whether the good faith requirement has been satisfied is a

---

[4] Both Welsh and Leavitt concerned chapter 13 cases. However, the totality-of-the-circumstances test is applicable to both chapter 13 and chapter 11 cases alike.  See In re Mitchell, 357 B.R. 142, 154 (Bankr. C.D. Cal. 2006) (noting that "[c]ourts applying the Chapter 11 and Chapter 13 bad faith tests generally consider a variety of non-exclusive factors" and listing five factors similar to those considered in Welsh and Leavitt).

10

'fact intensive inquiry' that involves examining 'the totality of facts and circumstances' and determining whether the petition is consistent with the purposes of the Bankruptcy Act or is 'patently abusive.'" 1500 Mineral Spring Assocs., LP v. Gencarelli, 353 B.R. 771, 781 (D.R.I. 2006) (quoting NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F.3d 108, 118 (3d Cir. 2004)). "The question of good faith is factual and will often require the introduction of evidence." In re Stolrow's, Inc., 84 B.R. at 170 (citing In re Universal Clearing House Co., 60 B.R. 985, 994 (D. Utah 1986)). A bankruptcy court's findings of fact "must be sufficient to enable a reviewing court to determine the factual basis for the court's ruling." Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 919 (9th Cir. BAP 2011) (citing Vance v. Am. Haw. Cruises, Inc., 789 F.2d 790, 792 (9th Cir. 1986)).

The bankruptcy court's OSC raised six issues, the last of which was whether the case should be "dismissed as a bad faith filing." At the hearing, the court barely mentioned the first five issues[5] and instead focused solely on the question whether the case was a bad faith improper filing. The court mentioned only two circumstances as a basis for a bad faith determination.

First, the court stated that a "strip mall tax preparer person" was purportedly running the debtor, but was really just a "front" for "somebody in the background" who was "a fugitive at

---

[5] The court confirmed that the debtor is a Delaware corporation, presumably in connection with the venue issue.

11

this point in time . . . ." The court said that "I know who [the fugitive] is" but did not identify the person.

Second, the court observed that Prometheus had filed the bankruptcy case in order to buy time to continue litigating a case that it had already lost twice in the courts of two nations.

We recognize that, "[e]ven when a bankruptcy court does not make formal findings, . . . the BAP may conduct appellate review 'if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings.'" In re Veal, 450 B.R. at 919-20 (quoting Gardenhire v. Internal Revenue Serv. (In re Gardenhire), 220 B.R. 376, 380 (9th Cir. BAP 1998), rev'd on other grounds, 209 F.3d 1145 (9th Cir. 2000)). "After such a review, however, when the record does not contain a clear basis for the court's ruling, we must vacate the court's order and remand for further proceedings." Id. at 920 (citing Alpha Distr. Co. of Cal., Inc. v. Jack Daniel Distillery, 454 F.2d 442, 452-53 (9th Cir. 1972); Canadian Comm'l Bank v. Hotel Hollywood (In re Hotel Hollywood), 95 B.R. 130, 132-34 (9th Cir. BAP 1988)).

We have carefully scrutinized the excerpts of record provided by Prometheus. We have also exercised our discretion to review the entire docket in the bankruptcy court. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008). We are unable to find any evidentiary support for the bankruptcy court's statements about the person who was actually controlling the debtor and that the real control person was a fugitive.

We note that the court conducted several status conferences.

12

It is possible that the bankruptcy court relied on information revealed in those conferences (although Prometheus's counsel represented at oral argument that the bankruptcy court's concerns regarding the two grounds for dismissal were never discussed at the status conferences). But the bankruptcy court did not say that it was doing that, and we have no minutes, transcript, or other record of what transpired during those conferences. We cannot speculate that evidence not in the trial or appellate record might support the court's ruling.

We also think that the record does not support the court's finding that the debtor was merely attempting to buy time in which to continue meritless litigation. The bankruptcy court correctly found that the debtor was defeated in U.S. and French courts. It is also correct that abuse of the automatic stay or use of other litigation tactics unrelated to reorganization can constitute bad faith warranting dismissal. If "a debtor seeks to use a chapter 11 filing to 'unreasonably deter and harass creditors,' such a filing lacks good faith." In re Sullivan, 522 B.R. at 615 (quoting In re Marsch, 36 F.3d at 828). Furthermore, the Ninth Circuit has stated that courts may dismiss "cases filed for a variety of tactical reasons unrelated to reorganization." In re Marsch, 36 F.3d at 828.

"Cause" for dismissal may exist if the debtor seeks an automatic stay to defeat state court litigation. Cf. id. ("One limitation some courts have implied under section 1112(b) involves Chapter 11 cases filed to stay a state court judgment against the debtor pending appeal. In those cases, courts have expressed concern that the petition is merely a 'litigating

13

tactic' designed to 'act as a substitute for a supersedeas bond' required under state law to stay the judgment." (citation omitted)); In re Mitchell, 357 B.R. at 154 (courts should consider "whether the debtor intended to invoke the automatic stay for improper purposes, such as for the sole objective of defeating state court litigation" (citation omitted)).

But the bankruptcy court did not indicate that it considered the unusual circumstances of this case.

In the first place, the debtor offered evidence that it was entitled under French law to de novo review of the French trial court's judgment. Therefore, Prometheus's initial defeat in France is less significant than it appears.

Further, Prometheus provided unrebutted evidence that, in order to prosecute the appeal and obtain de novo review of the French trial court's judgment, it had to either pay the judgment in full (which it could not afford to do) or demonstrate that it could not pay the judgment by filing a bankruptcy case. In other words, Prometheus was not invoking the automatic stay "for the **sole** objective of **defeating** [non-bankruptcy] litigation," In re Mitchell, 357 B.R. at 154 (emphases added), or to stall the legitimate collection activities of creditors. Rather, Prometheus filed a bankruptcy petition because, if it did not do so, it would have irrevocably lost a potentially valuable asset – the claims against GEM – to the detriment of all creditors (other than GEM). In light of this unrefuted evidence, the bankruptcy court committed clear error when it found that Prometheus filed the bankruptcy petition as a delaying tactic.

Finally, we note that the court's oral ruling does not

14

indicate that the court engaged in the broad examination of the circumstances that the good faith standard requires. See In re Welsh, 711 F.3d at 1129 n.45. We do not mean to suggest that the good faith inquiry is a "check the boxes" exercise. We do think, however, that the bankruptcy court abused its discretion when it dismissed a bankruptcy case based on only two findings, particularly where the evidence in the record does not support either finding.

**CONCLUSION**

For the reasons set forth above, we VACATE the bankruptcy court's order dismissing Prometheus's bankruptcy petition and REMAND to the bankruptcy court to (1) consider whether the evidence supports a finding of bad faith or other "cause," (2) consider whether conversion, dismissal, or the appointment of a trustee is in the best interests of creditors and the estate, and (3) make appropriate findings of fact.